UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Brian S. Morrow,

Petitioner,

vs.                                                    REPORT AND RECOMMENDATION

Ricardo Rios,

Respondent.            Civ. No. 08-320 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see Title 28 U.S.C. §2241.  The Petitioner appears pro se, and the Respondent appears by Michelle E. Jones, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied, and that the Petitioner's Motion for a Directed Verdict be denied.

## II. Factual Background

The Petitioner was convicted of Possession with Intent to Distribute 500 grams or more of Cocaine Base, in violation of Title 21 U.S.C. §§841(a)(1)(A), and 841(b)(1)(B), by the United States District Court for the Southern District of Indiana. See, Declaration of Angela Buege ("Buege Decl."), Docket No. 11, at ¶3 and Attachment A. He was sentenced to a term of sixty (60) months, and he is currently incarcerated at the Federal Correctional Institution, in Waseca, Minnesota ("FCI-Waseca"). Id. The Petitioner's projected release date is October 13, 2008, according to the Bureau of Prisons' ("BOP's") website.

On June 14, 2007, the Petitioner was transferred to a Residential Re-Entry Center ("RRC") for the remainder of his sentence. Id. at ¶4 and Attachment A. However, on August 25, 2007, while at the RRC, the Petitioner was charged with possession of intoxicants and, on October 26, 2007, following a disciplinary Hearing, the Petitioner was found guilty of that charge. Id. As a result, the Petitioner lost twenty-seven (27) days of good conduct time, and he was transferred back to FCI-Waseca, on December 5, 2007. Id. at ¶4 and Attachments A-B.

Shortly after his return to prison, on December 27, 2007, the Petitioner submitted an informal request to Michael R. Isaacson ("Isaacson"), who is a unit

- 2 -

manager at FCI-Waseca, in which he asked to be placed at an RRC, for the last six (6) months of his incarceration -- ten (10) per cent of his sentence -- in order to work and save money "to find someplace to live, pay some of my debt, and have a better chance at success after prison."  Petitioner's Memorandum in Support, Docket No. 2, at Attachment A; see also, Petition, Docket No. 1, at p. 7.

By way of additional background, the BOP has a sequential Administrative Remedy Program ("Program"), which is described in 28 C.F.R. §§542.10 et seq.  The Program requires that an inmate "first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue * * * ."  28 C.F.R. §542.13(a). If the inmate is not satisfied with the informal resolution, then he can submit a written Administrative Remedy Request to the warden of the facility, within "20 calendar days following the date on which the basis for the Request occurred."  28 C.F.R. §542.14(a).  "[A] Request * * * is considered filed on the date it is logged into the Administrative Remedy Index as received."  28 C.F.R. §542.18.  "Once filed, response shall be made by the Warden * * * within 20 calendar days[.]"  Id.

"An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form * * * to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."  28 C.F.R. §542.15(a).

- 3 -

The Regional Director's response is due thirty (30) calendar days thereafter.  See, 28 C.F.R. §542.18.  "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form * * * to the General Counsel within 30 calendar days of the date the Regional Director signed the response."  28 C.F.R. §542.15(a).  The General Counsel's response is due forty (40) calendar days thereafter.  See, 28 C.F.R. §542.18.  "Appeal to the General Counsel is the final administrative appeal."  28 C.F.R. §542.15(a).  At any stage of the Program, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. §542.18.  Therefore, in order to have exhausted his administrative remedies, an inmate must have followed the sequential process through to a final determination, by the General Counsel.

On January 10, 2008, Isaacson denied the Petitioner's informal request, based upon the Petitioner's decision to consume alcohol during his previous RRC placement, as well as the Petitioner's "statements to [his] unit team indicating [he] purposely violated the rules of the RRC in order to return to a more secure environment."  Petitioner's Memorandum in Support, supra, Attachment B.  However, Isaacson advised the Petitioner that, "[d]espite your self-destructive behavior, your

- 4 -

unit team is requesting a 90-120 day RRC placement," which would be "adequate to secure a residence and employment," given that the Petitioner had been able to obtain employment during his previous RRC placement. Id. In particular, Isaacson observed that the Petitioner had no medical concerns which would "hinder [his] chances for employment," and he observed that the Petitioner "ha[d] indicated [he] may even be able to return to [his] prior employer." Id. Isaacson also observed that the Petitioner would be released "to a large community (Indianapolis, Indiana), which will offer many services and resources not available in smaller communities." Id.

On January 14, 2008, the Petitioner submitted an informal request to Mrs. Syverson ("Syverson"), who is his Case Manager, in which he asks that "the full gratuity of $500.00 to be granted to me upon my release as I will be released with nothing." Id., Attachment F; see also, Petition, supra at p. 7. On the same date, the Petitioner submitted an informal request to Ricardo Rios ("Rios"), who is the Warden of FCI-Waseca, in which he repeated his request to be reconsidered for placement at a halfway house, for the last six (6) months of his incarceration. See, Petitioner's Memorandum in Support, supra, Attachment C.[1]

---

[1]Although Attachment C is dated January 14, 2007, this appears to be a typographical error, as it appears that the Petitioner first submitted an informal request
(continued...)

- 5 -

On January 28, 2008, the Petitioner submitted another informal request to Rios, in which he advised that he needed a written response, to his informal request of January 14, 2008, "for my Writ of Habeas Corpus under Title 18 USC section 2241." Id., Attachment D.  On February 4, 2008, Rios responded to the Petitioner's requests, and advised that the Petitioner had been recommended for a three (3) to four (4) month RRC placement, after his unit team concluded that he was unlikely to successfully complete a six (6) month placement, based upon his previous misconduct while at an RRC.  See, Petitioner's Second Reply Memorandum, Docket No. 21, Attachment B-2.  Rios also advised that a review of the Petitioner's file disclosed that the Petitioner had the support of his mother; that he had a high school diploma and training in the telecommunication, fiber optics, and cable system trades; and that he might be able to return to his prior employment upon release.  Id.  Accordingly, Rios advised that the recommended RRC placement was "adequate to secure a residence, obtain employment, and accrue release funds."  Id.

On January 29, 2008, the Petitioner completed an Informal Resolution Attempt form, in which he stated that "[t]he reply denying me 6 months RRC is based upon

---

[1](...continued)
to Rios on January 14, 2008.  See, Petitioner's Memorandum in Support, supra, Attachment D; Petitioner's Reply Memorandum, Docket No. 16, at p. 2.

supposition of things I 'may' be able to do, or 'may' be able to receive in the 'large community' I am being released to." Id., Attachment E.[2]  The Petitioner also stated that "[i]t is unfair to judge me as 'having my chance' as Mrs. Syverson told me in my team where Mr. Isaakson, Mr. VanRooy, and Mrs. Syverson deemed I deserved only 3 to 4 months RRC placement." Id.  On February 12, 2008, the Petitioner completed another Informal Resolution Attempt form, in which he again requested a release gratuity of $500.00.  See, Petitioner's Reply Memorandum, Docket No. 16, Exhibit at unnumbered page 12.

On February 21, 2008, Syverson responded to the Petitioner's concerns, and advised that "there is no evidence [that the Petitioner had] been treated with bias," and that "[e]ach RRC decision is made on a case by case determination, as each case presents a unique set of circumstances." Id. at unnumbered page 6.  She also advised that the Petitioner had "job skills, possible employment [and] community resources," and therefore, "[a] 90-120 day placement is deemed adequate." Id. at unnumbered

---

[2]The form which the Petitioner completed advises that "this form will serve as documentation by the respective staff member and the Unit Manager to indicate an informal attempt to resolve the complaint of the following inmate." Petitioner's Memorandum in Support, supra, Attachment E.  In addition to providing space for the inmate to submit his complaint, the form contains space for a staff response, which is "to be completed within five working days." Id.

page 3.  Syverson further advised that she would recommend a $100.00 gratuity for the Petitioner's release, "[b]ased on his specific needs, anticipated 4 months RRC, ability to work and save money while here, anticipation of timely employment based on last RRC placement, [and] return to large community with resources[.]" Petitioner's Reply Memorandum, supra, Exhibit at unnumbered page 12.

On March 4, 2008, the Petitioner submitted three (3) Administrative Remedy Requests at FCI-Waseca, in which he formally requests six (6) months of RRC placement and $500.00 in release gratuity, and in which he claims that he has been the victim of bias, because other inmates, with shorter sentences, are granted six (6) months of RRC placement.  See, Buege Decl., supra at ¶13 and Attachment D; see also, Petitioner's Reply Memorandum, supra, Exhibit at unnumbered pages 4-5, 7-8, 13.

On March 20, and 24, 2008, Rios denied the Petitioner's Administrative Remedy Requests.  See, Petitioner's Reply Memorandum, supra, Exhibit at unnumbered pages 8, 14; Petitioner's Second Reply Memorandum, supra, Attachment B-5.  With respect to the Petitioner's claim of discrimination, Rios advised that RRC placement is determined on a case-by-case basis, based upon "the resources of the RRC facility, the nature and circumstances of the offense, the history and

- 8 -

characteristics of the offender, judicial recommendations, and the inmate's resources such as job skills, employability, community resources, and life skills." Id. at unnumbered page 8.  Accordingly, Rios advised that, "[c]omparing your sentence length to that of another [inmate] would not determine an appropriate RRC placement and cannot be used alone to demonstrate preferential treatment." Id.

Rios also denied the Petitioner's request for six (6) months of RRC placement. See, Petitioner's Second Reply Memorandum, supra, Attachment B-5.[3]  Rios again noted that, during his prior RRC placement, the Petitioner had been able to obtain employment, and that the Petitioner had both a high school diploma and training in the telecommunication, fiber optics, and cable system trades.  Id.  Rios observed that the RRC, and its larger community, had a number of services and resources available to assist the Petitioner during his transition, and he reiterated that the Petitioner was considered a poor risk for a six (6) month placement, based upon his previous violation while at an RRC.  Id.

Rios also denied the Petitioner's Request for $500.00 in release gratuity, and advised that "[y]ou have no right to a specific amount of a gratuity." Petitioner's

---

[3]Here, the Response is signed by D. Dobbs, the Acting Warden, on behalf of Rios. See, Petitioner's Second Reply Memorandum, supra, Attachment B-5.

Reply Memorandum, supra, Exhibit at unnumbered page 14.  He first cited BOP

Program Statement 5873.06, as follows:

> An inmate who is without personal funds may receive a
> gratuity when transferred to an RRC.  The amount shall
> enable the inmate to care for needs in transit and allow for
> purchase of necessary personal items upon arrival.

Id.

Rios then advised that the Petitioner would receive $100.00, plus release clothing, a

bus ticket, and funds for meals, upon his release to an RRC.  Id.  He further advised

that the RRC provided donated clothing, or access to a Goodwill store, and that it was

located three (3) blocks from a major bus terminal.  Id.

In each of his responses, Rios advised the Petitioner that he could appeal Rios's

decisions to the Regional Director, within twenty (20) calendar days.  Id. at

unnumbered pages 8, 14; Petitioner's Second Reply Memorandum, supra, Attachment

B-5.  Here, the Record discloses that on March 24, and 25, 2008, the Petitioner

appealed Rios's decisions, concerning the amount of his release gratuity, and his

request for a six (6) month placement.  Id. at unnumbered page 15; Petitioner's

Second Reply Memorandum, supra, Attachment B-6.[4]

_____

[4]The Petitioner also completed the paperwork to appeal Rios's decision, concerning
his claim of discriminatory treatment, although the form is unsigned and undated, and
(continued...)

On April 14, 2008, the Regional Director denied the Petitioner's appeal, concerning his request for a six (6) month RRC placement.  See, Petitioner's Second Reply Memorandum, supra, Attachment B-7.  On April 23, 2008, the Petitioner appealed that decision to the General Counsel and, on June 4, 2008, his appeal was denied.  Id., Attachments B-8, B-9, B-10, B-12.  The Record does not include the outcome of the Petitioner's appeal concerning the amount of his release gratuity.[5]

---

[4](...continued)
therefore, it is not clear if the Petitioner submitted that appeal to the Regional Director.  See, Petitioner's Reply Memorandum, supra, Exhibit at unnumbered page 9.

[5]In addition to the grievances we have detailed, on July 7, 2008, the Petitioner filed an Administrative Remedy Request directly with the Regional Director, in which he asserted that his release date had been postponed in retaliation for filing administrative grievances.  See, Petitioner's Second Reply Memorandum, supra, Attachment D.  The Petitioner advised that, on March 25, 2008, he was accepted for placement at the Volunteers of America of Indiana Brandon Hall Comprehensive Sanctions Center, with an expected arrival date of July 8, 2008.  See, Petitioner's Addendum, Docket No. 20, Attachment A.  However, the Petitioner contends that, on July 3, 2008, Isaacson and Rios informed him that he would not be released to the RRC on July 7, 2008, but they refused to provide a reason for that decision.  Id. at p. 6.  Accordingly, the Petitioner advises that he will now receive ninety (90) days of RRC placement, rather than 120 days.  Id. at p. 1.

We decline to address the Petitioner's purported retaliation claim here, because it is plainly unexhausted.  See, Petitioner's Second Reply Memorandum, supra at p. 6 and Attachment D.  Moreover, given that the Petitioner did not make those allegations of retaliation until his unsolicited second Reply Memorandum, the
(continued...)

Turning to consider the current Petition, we note that it was executed on January 30, 2008, after the Petitioner had submitted his informal grievances at the institutional level, but before he filed his formal Administrative Remedy Requests, or any appeals. The Petition does not challenge the propriety of his conviction, or the sentence imposed by the District Court. Instead, he challenges the BOP's denial of his request for six months of RRC placement, as an unreasonable application of Title 18 U.S.C. §§3621(b), and 3624(c), and he asks that we order his immediate placement in an RRC. See, Petition, supra at p. 3; Petitioner's Memorandum in Support, supra at 3. He also contends that he is entitled to receive $500.00, upon his release from prison, pursuant to Title 28 U.S.C. §3624(d), and 28 C.F.R. §§571.20, 571.21. Id. at p. 4. In his Petition, the Petitioner admits that he has not exhausted his administrative remedies, but he contends that exhaustion would be futile, given the time remaining in his sentence, and given his request for an early release to an RRC. Id. at p. 7.

In its response, the Respondent asks that we dismiss the Petition for three reasons: 1) because the Petitioner failed to exhaust his administrative remedies; 2) because a challenge to the place of confinement is not cognizable in a Habeas Petition

---

[5](...continued)
Respondent has not been provided with any notice or opportunity to respond to the Petitioner's claims.

pursuant to Title 28 U.S.C. §2241; and 3) because the Petitioner has no statutory or constitutional right to six (6) months of RRC placement, or to $500.00 in release gratuity.  See, Respondent's Memorandum in Opposition, Docket No. 10, at 4-9.

We address the parties' arguments in turn.

### III.  Discussion

A.     Exhaustion of Administrative Remedies.  As noted, as of the date on which the Petitioner filed his Petition for Habeas relief, he had not fully exhausted his administrative remedies as to the issues raised in his Petition, nor are we able to ascertain, on this Record, whether the administrative remedies have since been exhausted.  Accordingly, the Respondent asks that we dismiss the Petition.  However, the Petitioner asks that we excuse the exhaustion requirement as futile, based upon his contention that any such appeal would be denied based upon an official BOP policy. See, Petitioner's Reply Memorandum, supra at 3.

Other Courts have concluded that exhaustion is futile when a petitioner challenges the validity of BOP regulations.  See, Rist v. Morrison, 2006 WL 2403572 at *3 n. 1 (D. Minn., August 18, 2006); Durst v. Morrison, 2006 WL 1428261 at *3 (D. Minn., May 22, 2006); Ragsdale v. Caraway, 2006 WL 44017 at *3 (D. Minn., January 6, 2006), citing United States v. Paige, 369 F. Supp.2d 1257 (D. Mont. 2005),

Vargas-Crispin v. Zenk, 376 F. Supp.2d 301, 303 (E.D.N.Y. 2005); Knish v. Stine, 347 F. Supp.2d 682, 686-87 (D. Minn. 2004); see also, Elwood v. Jeter, 386 F.3d 842, 845 n. 1 (8th Cir. 2004)(noting that the Government had waived the exhaustion requirement because it conceded that continued use of the grievance procedure to contest the validity of the BOP's policy would be futile).  Here, by comparison, the Petitioner challenges the application of BOP policy to his sentence and release. Nonetheless, we note that the Petitioner is currently scheduled for release on October 13, 2008, which, he contends, leaves little time for a lengthy administrative appeal. See, Petition, supra at p. 7.  Ultimately, we conclude that the Petitioner has completed enough of the administrative process to sufficiently develop the factual record, such that we are able to consider his claims on their merits.  Accordingly, the Petitioner's failure to exhaust his administrative remedies is excused.

B.  Availability of Relief Under Title 28 U.S.C. §2241.  Federal Habeas provides a remedy only for prisoners challenging the fact or duration of their custody, rather than the conditions of their confinement.  See, Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996)("If the prisoner is not challenging the validity of his conviction or the length of his detention * * * then a writ of habeas corpus is not the proper remedy."); see also, Otey v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993), cert.

- 14 -

denied, 512 U.S. 1246 (1994)("The central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement and are seeking immediate release or a speedier release."); Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991)("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement * * *[;] [a] civil rights action, in contrast, is the proper method of challenging 'conditions of * * * confinement.'")[internal citation omitted].  Here, the Petitioner challenges not the conditions of his confinement, but instead, the underlying policies that determine where that confinement will take place.  As a consequence, the Respondent argues that a Habeas Petition, pursuant to Section 2241, is an inappropriate vehicle for pursuing the Petitioner's claim for immediate RRC placement.

We note, however, that our Court of Appeals entertained a similar challenge to RRC placement, which was advanced under Section 2241, in Elwood v. Jeter, supra at 845.  In Elwood, the petitioner challenged a BOP policy that limited the discretion of the BOP in placing a prisoner in an RRC for all or part of his confinement.  Id. at 847.  The Court of Appeals entertained the petitioner's challenge on its merits, but did not expressly address the procedural propriety of the Petition under Section 2241.  A

- 15 -

District Court, deciding a similar case in the aftermath of <u>Elwood</u>, noted that, "[s]ince the Eighth Circuit has recently decided this similar §2241 claim on the merits, jurisdiction is presumed, and this Court is now obligated to exercise jurisdiction over [the petitioner's] petition for §2241 habeas corpus relief."  See, <u>Knish v. Stine,</u> supra at 686.  Other decisions, from this District, have followed suit.  See, e.g., <u>Ragsdale v. Caraway,</u> supra at *4; <u>Hayek v. Caraway,</u> Civ. No. 05-1424 (PAM/JSM), Docket No. 10 at p. 5, adopted, 2005 WL 3334600 (D. Minn., December 7, 2005)(Magnuson, J.); <u>Threlkeld v. Morrison,</u> Civ. No. 05-2604 (PAM/AJB)(Magnuson, J.).

Moreover, the Court of Appeals for the Third Circuit thoroughly addressed the question, and found Section 2241 to be the appropriate vehicle for a challenge to a RRC placement, noting its agreement with the Second, Sixth, Ninth, and Tenth Circuits.  See, <u>Woodall v. Federal Bureau of Prisons,</u> 432 F.3d 235, 243 (3rd Cir. 2005); but see, <u>Richmond v. Scibana,</u> 387 F.3d 602 (7th Cir. 2004).  Given the precedent provided by <u>Elwood v. Jeter,</u> supra, and the weight of authority in this District, and in five other Circuits, we are persuaded that the Petitioner has chosen an

appropriate means to raise his challenge in this Court, with respect to his request for RRC placement.[6]

  C. <u>The Petitioner's Request for RRC Placement.</u> Here, the Petitioner contends that he is entitled to six (6) months of RRC placement, pursuant to Title 18 U.S.C. §3621(b).  See, <u>Petitioner's Memorandum in Support</u>, supra at p. 2.  He also contends that the Respondent improperly denied his request for RRC placement, based upon the Petitioner's earlier misconduct -- possessing and consuming alcohol -- while in RRC placement.  <u>Id.</u> at p. 2.

---

  [6]The Respondent has not specifically argued that the Petitioner's claim for release gratuity cannot be considered within the context of a Section 2241 Habeas Petition. Cf., <u>Fitzgerald v. Thomas</u>, 2008 WL 2628442 at *1 n. 1 (D. Or., June 30, 2008) (concluding that a claim relating to release gratuity essentially requests monetary relief, which is not available under Section 2241); <u>Sumners v. Reese</u>, 2007 WL 1438982 at *2 (S.D. Miss., May 11, 2007)(concluding that a claim for release gratuity is "not habeas in nature").  However, this Court has previously considered an identical claim, pursuant to Section 2241, acknowledging that the petitioner had "fail[ed] to request relief under the appropriate statutory provision," but concluding that we would "decline to recommend a dismissal of this Petition, without prejudice, based upon these procedural deficiencies, only to be revisited by the same issues after the available remedies had been exhausted."  <u>Camacho v. Stiff</u>, Civ. No. 00-1045 (MJD/RLE), Docket No. 7 at p. 4 n. 3, adopted, Docket No. 10.  Similarly, here, we conclude that the Petitioner's request for a $500.00 release gratuity is meritless, and because we recommend dismissal based upon the merits, we need not resolve any procedural irregularities.

The BOP's authority to designate the location of an inmate's imprisonment is provided by Title 18 U.S.C. §3621(b), which enumerates five (5) factors that the BOP, at a minimum, must consider in making its ultimate determination on RRC placement, and which reads as follows:

> (b)    Place of imprisonment. -- The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering --
>
> > (1)    the resources of the facility contemplated;
> >
> > (2)    the nature and circumstances of the offense;
> >
> > (3)    the history and characteristics of the prisoner;
> >
> > (4)    any statement by the court that imposed the sentence --
> >
> > > (A)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > >
> > > (B)    recommending a type of penal or correctional facility as appropriate; and

(5)   any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

Title 18 U.S.C. §3621(b).[7]

Here, the Petitioner contends that the Respondent cannot refuse his request for RRC

placement, based upon his earlier violation because, he contends, that violations are

---

[7]On April 9, 2008, Section 3621(b) was amended, to include the following conclusion:

Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

Title 18 U.S.C. §3621(b).

This amendment has no impact upon our analysis here.

- 19 -

not among the factors listed in Section 3621(b).  See, <u>Petitioner's Memorandum in</u>

<u>Support</u>, supra at p. 2.

Another statute, Title 18 U.S.C. §3624(c), addresses the housing of prisoners,

who are nearing the end of their incarceration period, by providing as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, **not to exceed six months, of the last 10 per centum of the term** to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement.

<u>Title 18 U.S.C. §3624(c)</u> [emphasis added].[8]

---

[8]On April 9, 2008, Section 3624(c) was amended by the Second Chance Act of 2007, <u>Public Law No. 110-199, 122 Stat. 657 (2008)</u>, and now reads as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, **not to exceed 12 months**, under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

<u>Title 18 U.S.C. §3624(c)</u> [emphasis added].

"In reaction to this statute, and the new 12-month maximum placement, the BOP issued guidance directing that inmates must now be reviewed for pre-release RRC

(continued...)

- 20 -

Contrary to the Petitioner's assertion, neither Section 3621, nor Section 3624, require the BOP to provide a full six (6) months of RRC placement.  See, Ross v. Morrison, 2008 WL 508505 at *4 (D. Minn., February 21, 2008), citing Rennicke v. Sanders, 2006 WL 1817089 (E.D. Ark., June 30, 2006); Sisneros v. Anderson, 2007 WL 3512647 at *4 (D. Minn., November 14, 2007); Swarzentruber v. Holinka, 2007 WL 3237637 at *4 (D. Minn., October 30, 2007).

Instead, the BOP only has a duty to consider whether RRC placement would be appropriate, based upon the five (5) factors listed in Section 3621.  As stated by our Court of Appeals:

> [Section] 3621(b) gives the BOP the **discretion** to transfer prisoners to [RRCs] at any time during their incarceration. Further, the BOP is required to place prisoners in "conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community" during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable.  This duty

---

[8](...continued)
placements 17-19 months before their projected release dates."  Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2008).  In his filings since the Second Chance Act became effective, the Petitioner has not argued that this amended version of the statute is applicable to his current claims, nor has he argued that he is entitled to twelve (12) months of RRC placement.  Accordingly, we do not address the statutory amendment further.

> shall not extend beyond the last six months of the
> prisoner's sentence.

Elwood v. Jeter, supra at 847 [emphasis added].

In Elwood, the Court focused on the inclusion of the term "shall," in Section 3624(c),
and construed that inclusion as imposing a qualified duty on the BOP to reintegrate
the prisoners, prior to their release into society. Id. at 846-47. The Court found that
the affirmative duty, which was created by the use of the term "shall" in Section
3624(c), did not conflict with, or otherwise restrict, the general grant of authority that
was invested in the BOP by Section 3621(b). Id. at 847. Accordingly, the Court
concluded that the language in Section 3621(b) imbued the BOP with the discretion
to transfer a prisoner, "at any time," from one correctional facility to another,
including an RRC. Id.

However, the Court emphasized that Section 3624(c) does not require
placement in an RRC. Id. Accordingly, "[u]nder §3621(b), the BOP may place a
prisoner in [an RRC] for six months, or more," but the BOP's only obligation is "to
facilitate the prisoner's transition from the prison system." Id. Nonetheless, "the
obligation is qualified by the phrase 'to the extent practicable,'" and "[s]ecurity
concerns or space limitations in [an RRC] near the prisoner's home are among the

factors that may make it impractical to transfer a prisoner to [an RRC] for all or even part of the transition period."  Id.

Following the Elwood decision, the BOP promulgated new regulations in 2005, which were codified in Title 28 C.F.R. §§570.21, and 570.22 (2005).  See, Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006).  Through those regulations, the BOP attempted to make a "categorical exercise of discretion," that inmates could not be considered for RRC placement until "the last ten percent of the prison sentence being served, not to exceed six months."  Id. at 1090, quoting 28 C.F.R. §§570.20-.21.  In Fults, our Court of Appeals invalidated those regulations, after concluding that Section 3621(b) requires the BOP to consider the five enumerated factors on an individual basis.  Id. at 1092.

As a result, the BOP adopted the position that Sections 570.20, and 570.21, were invalid, and has subsequently returned to the BOP guidelines, which existed prior to 2002, as set forth by Program Statement 7310.04, which was issued on December 16, 1998.[9]  See, Buege Decl., supra, Attachment C; see also, Miller v. Whitehead, 527 F.3d 752, 756-58 (8th Cir. 2008)(approving the time frames specified

---

[9]Program Statement 7310.04 is electronically available at http://www.bop.gov/policy/progstat/7310_004.pdf.

in Program Statement 7310.04); <u>Mickelson v. Holinka</u>, 2007 WL 2262877 at *2 (D.

Minn., August 3, 2007)("[I]t is well-established that [Program Statement 7310.04]

does not contravene 18 U.S.C. §3621(b).")(collecting cases).   Program Statement

7310.04 states that a final recommendation for RRC placement "is normally

established at a team meeting no later than 11 to 13 months before an inmate's

projected release date." <u>Id.</u> at p. 7.  An inmate can be referred for up to 180 days of

RRC placement, "with placement beyond 180 days highly unusual, and only possible

with extraordinary justification," including approval by the BOP Regional Director.

<u>Id.</u> at p. 8.  In addition, "[w]hen an inmate has a history of escape or failure in one or

more [RCC] Programs, careful review and consideration should be given regarding

the suitability of participation and the length of placement." <u>Id.</u>

    As noted, both Section 3624 and Program Statement 7310.04 plainly indicate

that the BOP is to determine, on an **individual basis**, how much time each Federal

prisoner should spend at an RRC.  The statute sets a maximum amount of time that a

prisoner can spend at an RRC, but it does not set any minimum amount of time that

a prisoner must spend at an RRC.  Although the Petitioner contends that he should be

sent to an RRC not less than six (6) months before his release date, the Record

demonstrates that the BOP considered the Petitioner's individual circumstances, and

selected an RRC transfer date that was deemed best for his particular situation.  See,
<u>Petitioner's Memorandum in Support</u>, supra, Attachment B; see also, <u>Petitioner's
Reply Memorandum</u>, supra, Exhibit at unnumbered pages 3, 6, 12; <u>Petitioner's Second
Reply Memorandum</u>, supra, Attachments B-2, B-5, B-7, and B-12.  This is precisely
what the applicable law requires the BOP to do.

Moreover, "[a]lthough the warden's responses were brief, the statute does not
require the BOP to provide prisoners with a detailed statutory analysis whenever a
prisoner requests an immediate transfer to an RRC."  <u>Miller v. Whitehead</u>, supra at
758.  Instead, the BOP is obligated to consider a request "in good faith," <u>id.</u>, quoting
<u>Fults v. Sanders</u>, supra at 1089, and it is uniquely qualified to do so.  See, <u>Hosna v.
Groose</u>, 80 F.3d 298, 303 (8th Cir. 1996), cert. denied, 519 U.S. 860 (1996)("[F]ederal
courts ought to afford appropriate deference and flexibility to [prison] officials trying
to manage a volatile [prison] environment," and "such flexibility is especially
warranted in the fine tuning of the ordinary incidents of prison life," in order that the
Courts do not "micro manage" prisons.), quoting <u>Sandin v. Conner</u>, 515 U.S. 472,
482-83 (1995).  Although the Petitioner believes that the BOP misjudged his
circumstances and his needs, he has not identified any **legal error** in the BOP's
decision-making process, or in the BOP's ultimate conclusion as to when he should

- 25 -

be sent to an RRC, and we find no basis to conclude that any of the BOP officials acted other than in good faith.[10]

We have not overlooked the Petitioner's allegation that his RRC transfer date was based, in part, upon his prior violation for possession of alcohol during an earlier RRC placement.  However, that allegation, by itself, adds nothing of consequence to the Petitioner's claim, given that the governing statute plainly contemplates a consideration of a prisoner's history and characteristics, as demonstrated by the Program Statement's specific consideration of a prisoner's failed RRC placements. Accordingly, the Record demonstrates that the BOP properly considered all of the Petitioner's relevant history -- including his prior violation -- in setting his transfer date.

In sum, although the Petitioner disagrees with the BOP's assessment of his need for RRC placement, he has not identified any violation of law which arises from the BOP's determination of his RRC transfer date, and which would warrant judicial

---

[10]In his supporting memorandum, the Petitioner argues, without explanation or citation, that the denial of six (6) months in RRC placement is a "collateral consequence" of his previous alcohol violation.  See, Petitioner's Memorandum in Support, supra at p. 2.  We find no basis for his unsupported claim that this amounts to a Due Process violation.

intervention.  Therefore, we recommend that the Petitioner's request for Habeas relief be denied.

D.    <u>The Petitioner's Request for Release Gratuity</u>.  Lastly, the Petitioner broadly alleges that he is entitled to a $500.00 release gratuity, in accordance with BOP Program Statement 5873.06, <u>Release Gratuities, Transportation & Clothing</u>.[11] Specifically, the Petitioner argues that he is in financial need of a release gratuity, and that Program Statement 5873.06 requires that he be granted a release gratuity in the full amount of $500.00.  Construing the Petition generously, we understand the Petitioner to argue that the failure to provide him with a $500.00 release gratuity amounts to a Due Process violation.

"The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause."  <u>Memphis Light, Gas & Water Div. v. Craft</u>, 436 U.S. 1, 9 (1978).  What constitutes a "property interest" -- deserving of constitutional protection -- has been something of a vexing question.  Nevertheless, in a pair of companion cases, which were decided in 1972, the Supreme Court took

---

[11]Program Statement 5873.06 is electronically available at http://www.bop. gov/policy/progstat/5873_006.pdf.

pains to explore the full meaning of a "property" interest that is protected by

procedural due process.  In <u>Board of Regents v. Roth</u>, 408 U.S. 564 (1971), the

plaintiff sued his employer, a State University, claiming that his employer's refusal

to renew his one-year term of employment was a denial of a constitutionally sheltered

property interest.  In discussing the attributes of such a property interest, the Supreme

Court explained:

> To have a property interest in a benefit, a person clearly
> must have more than an abstract need or desire for it.  He
> must have more than a unilateral expectation of it.  He
> must, instead, have a legitimate claim of entitlement to it.
> It is a purpose of the ancient institution of property to
> protect those claims upon which people rely in their daily
> lives, reliance that must not be arbitrarily undermined.  It is
> a purpose of the constitutional right to a hearing to provide
> an opportunity for a person to vindicate those claims.
>
> Property interests, of course, are not created by the
> Constitution.  Rather, they are created and their dimensions
> are defined by existing rules or understandings that stem
> from an independent source such as state law -- rules or
> understandings that secure certain benefits and that support
> claims of entitlement to those benefits.

<u>Id.</u> at 577.

In applying those guidelines to the circumstances in <u>Roth</u>, the Court noted that neither

the laws governing the plaintiff's employment with the University, nor the terms of

his contractual relationship with that employer, provided for a "renewal" of his

contract after his existing one-year contract expired.  As such, the Court concluded

that the plaintiff "did not have a **property** interest sufficient to require the University

authorities to give him a hearing when they declined to renew his contract of

employment."  Id. at 578 [emphasis in original].

On the same day that Roth was issued, the Supreme Court decided the similar --

but distinctly disparate -- circumstances of Perry v. Sindermann, 408 U.S. 593 (1972).

There, the plaintiff was also a nontenured professor at a State Junior College whose

one-year contract was not renewed.  Unlike its determination in Roth, the Court

concluded that the plaintiff had alleged a property interest, deserving of constitutional

protection, because his employer had guidelines and "binding understandings" which

implicated a right to contract renewal.  In reliance upon Roth, the Court restated the

attributes of a property interest, which is worthy of constitutional protection, as

follows:

> We have made clear in Roth * * *, that "property" interests
> subject to procedural due process protection are not limited
> by a few rigid, technical forms.  Rather, "property" denotes
> a broad range of interests that are secured by "existing rules
> or understandings." * * * A person's interest in a benefit is
> a "property" interest for due process purposes if there are
> such rules or mutually explicit understandings that support
> his claim of entitlement to the benefit and that he may
> invoke at a hearing.

Id. at 601 [citations omitted].

- 29 -

Notably, "[a]lthough the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." Memphis Light, Gas & Water Div. v. Craft, supra at 9; see also, Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1031 (1992)(concluding that Roth is now the "traditional" approach).

Necessarily, in evaluating the Petitioner's entitlement to a release gratuity, we must look to BOP regulations, which purportedly support his claim for such a benefit. See, Memphis Light, Gas & Water Div. v. Craft, supra at 9.  In this evaluatory process, "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the **nature** of the interest at stake." Board of Regents v. Roth, supra at 570-71 [emphasis in original].  Given these parameters, we conclude that the Petitioner's interest in a release gratuity does not rise to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.  See, Memphis Light, Gas & Water Div. v. Craft, supra at 9.[12]

---

[12]In Roth, the Court summarized the absence of any independent source of a property right status to Roth's request to be rehired, as follows:

(continued...)

Here, we find no "existing rules," no contractual or quasi-contractual guarantees, and no "mutually explicit understandings," which support the Petitioner's claim to a release gratuity. Rather, the plain text of the regulation, upon which the Petitioner relies in support of his claim, establishes that the Respondent's decision, as to whether to grant a prisoner a release gratuity, is purely discretionary.

As outlined by the Respondent, Title 18 U.S.C. §3624(d) authorizes the BOP to allocate clothing, funds, and transportation, to a prisoner upon his or her release. Specifically, Section 3624(d)(2) provides that, "[u]pon the release of a prisoner on the expiration of the prisoner's term of imprisonment, the Bureau of Prisons shall furnish

---

[12](...continued)
>    Thus, the terms of [Roth's] appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a **property** interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.

Board of Regents v. Roth, supra at 578.

Modifying this summary, in order to substitute the grant of a release gratuity to the Petitioner for Roth's interest in a rehiring, we believe that the foregoing summary has equal application to the Petitioner's release gratuity claim.

the prisoner with * * * an amount of money, not more than $500, **determined by the Director to be consistent with the needs of the offender and the public interest, unless the Director determines that the financial position of the offender is such that no sum should be furnished** * * *." [Emphasis added].  Further, the Purpose and Scope provision of Program Statement 5873.06 states as follows:

> It is the policy of the Bureau of Prisons that an inmate being released to the community will have * * * some funds to use until he or she begins to receive income. Based on the inmate's need and financial resources, **a discretionary gratuity** of up to the amount permitted by the statute may be granted.

[Emphasis added].

Contrary to the Petitioner's suggestion, an analysis of the plain text of the regulatory provisions, upon which the Petitioner relies, makes evident that the payment of a release gratuity, to a prisoner upon his release from prison, is subject to the discretion of prison officials.[13]  As such, the Petitioner's suggestion, that he had an entitlement

_____

[13]Here, the Respondent advises that a final decision will not be made, concerning the amount of the Petitioner's release gratuity until thirty (30) to forty-five (45) days before his transfer to an RRC.  See, Respondent's Memorandum in Opposition, supra at 10.  Moreover, the Petitioner was advised by BOP officials that he would receive a release gratuity of $100.00, "[b]ased on his specific needs, anticipated 4 months RRC, ability to work and save money while here, anticipation of timely employment based on last RRC placement, [and] return to large community with resources[.]" Petitioner's Reply Memorandum, supra, Exhibit at unnumbered pages 12, 14.  In

(continued...)

to the release gratuity, is untenable.   Consequently, having failed to establish a

necessary element of his claim -- namely, the existence and deprivation of a property

interest -- the Petitioner's claim must fail.[14]

Therefore, we recommend that the Petitioner's request for Habeas relief be

denied, and that the Petition be dismissed in its entirety.

NOW, THEREFORE, It is --

---

[13](...continued)
addition, the Petitioner has had several years of incarceration, during which he could
have saved funds in anticipation of his eventual release.  Other than his unadorned
insistence that he "qualifies" for a $500.00 release gratuity, the Petitioner has offered
no basis to conclude that BOP officials did not legitimately exercise their discretion
in deciding that the Petitioner was not entitled to a gratuitous award of $500.00 from
the Federal Government.

[14]Nor does the Petitioner's claim present a legally cognizable liberty interest.  As
the Supreme Court has explained, a prisoner's due process liberty interests are
constrained to those incidents which, "while not exceeding the sentence in such an
unexpected manner as to give rise to the Due Process Clause of its own force * * *,
nonetheless impose[] atypical and significant hardship on the inmate in relation to the
ordinary incidents of prison life."   Sandin v. Conner, 515 U.S. 472, 486 (1995).
Therefore, while some prison deprivations do serve to create liberty interests, they are
confined to those instances "which work such major disruptions in a prisoner's
environment and life that they present dramatic departures from the basic conditions
and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972
(8th Cir. 1996), citing Sandin v. Conner, supra at 482-84.  Here, there is nothing to
suggest that the Petitioner was subjected to an atypical hardship, as the BOP
regulations at issue make clear that not every prisoner is granted a release gratuity.
Further, the Petitioner has not alleged that the duration of his sentence was affected,
in any way, by the Respondent's decision to deny him a release gratuity of $500.00.

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied.


Dated:  October 9, 2008                 s/Raymond L. Erickson
                                        Raymond L. Erickson
                                        CHIEF U.S. MAGISTRATE JUDGE
                        **NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

**October 27, 2008,** a writing which specifically identifies those portions of the Report

to which objections are made and the bases of those objections.  Failure to comply

with this procedure shall operate as a forfeiture of the objecting party's right to seek

review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than October 27, 2008,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to

review the transcript in order to resolve all of the objections made.

- 34 -