**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| BRIAN S. MORROW, | Civil No. 08-320 (JRT/RLE) |
| Petitioner, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| RICARDO RIOS, | |
| Respondent. | |

---

Brian S. Morrow, #07494-028, 611 North Capitol Avenue, Indianapolis, IN 46204, petitioner *pro se*.

Michelle E. Jones, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; for respondent.

Petitioner Brian S. Morrow objects to a Report and Recommendation issued by United States Magistrate Judge Raymond L. Erickson on October 9, 2008. After a *de novo* review of those objections, the Court adopts the Report and Recommendation for the reasons stated below.

**BACKGROUND**

Morrow was convicted of possession with intent to distribute cocaine base, and was sentenced to a term of sixty months imprisonment by the United States District Court in the Southern District of Indiana. At the time when he filed this action, Morrow was imprisoned at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"), with a projected release date in October 2008. (*See* Buege Decl., Docket No. 11, ¶ 3.)

On June 14, 2007, Morrow was transferred to a Residential Re-Entry Center ("RRC") for the remainder of his sentence. (*Id*., ¶ 4.) On August 25, 2007, while at the RRC, Morrow was accused of violating the conditions of his RRC placement by possessing "intoxicants." (*Id*.) Morrow was found guilty of that charge after a hearing, stripped of twenty-seven days of good conduct of time, and transferred back to FCI-Waseca. (*Id*.)

On December 27, 2007, Morrow submitted a request to a unit manager at FCI-Waseca asking to be placed back in an RRC for the last six months of his sentence. (Docket No. 2, Ex. A.) On January 10, 2008, the unit manager informed Morrow that his request was being denied because of his prior violation, but that the unit manager would nonetheless request a second RRC placement of 90-120 days. (*Id*., Ex. B.) This denial indicated that period of 90-120 days would likely be sufficient to allow Morrow to transition to life outside of prison because Morrow had been able to obtain employment during his previous RRC placement; had indicated that he may even be able to return to his prior employer; and would be released to the Indianapolis area, which presented many employment opportunities. (*Id*.)

On January 14, 2008, Morrow sent a request to a prison official asking that he be given a $500 gratuity upon his release. (*Id*., Ex. F.) On the same day, Morrow sent a request to Ricardo Rios, the Warden of FCI-Waseca, again asking that he be given a six-month RRC placement. (*Id*., Ex. C.) Rios later indicated his agreement with the decision of Morrow's unit manager on the length of Morrow's second RRC placement. (Docket No. 21, Ex. B-2.) Rios noted that Morrow's file suggested he may have family support

and employment prospects upon his release, citing many of the same factors noted by Morrow's unit manager. (*Id.*) Rios also noted that Morrow had previously had a seventy-day stint in the RRC before violating the conditions of that placement. (*Id.*)

Following a lengthy series of additional informal and formal appeals on these matters – which are thoroughly recounted by the Magistrate Judge – prison officials concluded that (1) Morrow's proposed 90-120 day RRC placement was indeed a sufficient transition period; and (2) $100 (in addition to a bus ticket, funds for meals, and release clothing) was a sufficient release gratuity, particularly in light of Morrow's anticipated ability to find employment.

Morrow subsequently brought this habeas corpus petition pursuant to 28 U.S.C. § 2241, challenging the BOP's decisions on the length of his second placement in an RRC and the amount of his release gratuity. The Magistrate Judge recommends denying this petition, concluding that Morrow has not identified any legal error in the BOP's handling of his requests. Morrow now objects to that conclusion.

## ANALYSIS

**I.    RRC PLACEMENT[1]**

18 U.S.C. § 3621(b) affords the BOP the authority to designate an inmate's place of imprisonment. In the course of exercising this discretion, the BOP is to consider (1) the resources of the available facilities; (2) the nature and circumstances of the

---

[1] Rios argues that Morrow's petition is now moot, in light of the fact that Morrow has now completed his RRC placement, and begun his time on supervised release. In light of the Court's resolution of these issues on the merits, it need not address this argument.

prisoner's offense; (3) the history and characteristics of the prisoner; (4) statements and recommendations from the sentencing court; and (5) policy statements issued by the United States Sentencing Commission.  § 3621(b)(1)-(5).  18 U.S.C. § 3624 provides further direction relevant to the end of a term of imprisonment.  That statute directs the BOP to ensure, "to the extent practicable," that a prisoner spends "a portion" of the final months of his prison term under conditions that provide the prisoner with a "reasonable" opportunity to prepare for reentry into the community.  § 3624(c).  While the maximum transition period contemplated by that statute is now twelve months, that figure was six months at the time of Morrow's requests.[2]  *See* 18 U.S.C. § 3624(c) (2000) (amended 2008).  The Eighth Circuit has "emphasize[d] . . . that 18 U.S.C. § 3624(c) does not require placement" in an RRC; rather, "[i]t only obligates the BOP to facilitate transition from the prison system."  *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004).  Moreover, although the BOP is required to consider requests for RRC placements "in good faith," "the statute does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests a[] . . . transfer to an RRC."  *Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008).

In accordance with this framework, the BOP has promulgated Program Statement 7310.04.[3]  This statement outlines various factors the BOP considers in assessing

---

[2] The Eighth Circuit has held that in spite of the apparent limits established under § 3624(c), the BOP is authorized under § 3621(b) to approve transition periods in RRCs that exceed these limits.  *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004).

[3] This Program Statement was issued on December 16, 1998, and is available at http://www.bop.gov/policy/progstat/7310_004.pdf.  Courts have repeatedly held that Program

(Footnote continued on next page.)

individual requests for RRC placement. As relevant here, the statement notes that "[w]hen an inmate has a history of escape or failure in one or more [community corrections] Programs, careful review and consideration should be given regarding the suitability of participation and the length of placement."

Here, Morrow's release plan provided him with two opportunities to transfer to an RRC. Even after he violated the conditions of his initial placement, the BOP granted him a second transfer to an RRC for at least three months. Neither Morrow, nor this Court, has identified any legal basis for concluding that Morrow possesses an enforceable right to a longer transition period. As indicated in *Elwood*, § 3624(c) does not require any specific length of time in an RRC or in any other transition facility, and is qualified by the BOP's assessment of practical concerns such as security. 386 F.3d at 847. While BOP was obligated to provide for some transition period so long as it was "practicable," § 3624(c) simply does not mandate a specific number of months. Moreover, while the record does not reveal the specific number of days that Morrow spent in his second RRC stint, even if he merely was allowed 90 days, this would have amounted to a total of 160 days over the course of both of his stays in the RRC, just 20 days short of longest transition period contemplated by § 3624(c) at the time of his request. In those circumstances – in a case in which the record reflects individualized consideration of Morrow's repeated requests, and no evidence that prison officials acted other than in

---

(Footnote continued.)

Statement 7310.04 is a valid interpretation of § 3621(b). *See Mickelson v. Holinka*, No. 06-4261, 2007 WL 2262877, at *2 (D. Minn. Aug. 3, 2007) (collecting cases).

good faith – this Court has no legal basis to intervene. Accordingly, the Court agrees with the Magistrate Judge that this basis for Morrow's petition should be dismissed.

## II. RELEASE GRATUITY

18 U.S.C. § 3624(d)(2) directs the BOP to provide released prisoners with "an amount of money, **not more than $500**, determined by the Director to be consistent with the needs of the offender and the public interest, unless the Director determines that the financial position of the offender is such that no sum shall be furnished." (Emphasis added). Morrow argues that he should have been given the full $500 allowed under the statute, rather than the $100 he received.

As with Morrow's request for a longer transition period, the Court agrees with the Magistrate Judge that Morrow has identified no enforceable legal right to a larger release gratuity. Section 3624(d)(2) clearly establishes $500 as a **maximum** release gratuity, rather than a minimum, and the record includes multiple reasonable, individualized explanations by prison officials for why they believed $100 was sufficient. In those circumstances, the Magistrate Judge was correct in concluding that Morrow lacks an enforceable property interest in any specific gratuity, and this Court lacks any cognizable basis for granting Morrow relief. Accordingly, the Court overrules Morrow's objections and adopts the Report and Recommendation of the Magistrate Judge.[4]

---

[4] The Court notes that Morrow has filed two additional motions following Rios's motion to dismiss, seeking a directed verdict and judgment, respectively. While Morrow contends that his motion for judgment contains evidence of a procedural error on the part of BOP, this evidence relates to Morrow's alleged participation in an "unauthorized gathering" at an RRC in October 2008. (Docket No. 27, Ex. 1 at 2.) This incident appears to have come after Morrow's

(Footnote continued on next page.)

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** petitioner's objections [Docket No. 25] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated October 9, 2008 [Docket No. 23]. Accordingly, **IT IS HEREBY ORDERED** that:

1. The petition for habeas corpus [Docket No. 1] is **DENIED.**

2. Petitioner's Motion for Directed Verdict [Docket No. 17] is **DENIED**.

**IT IS FURTHER HEREBY ORDERED** that:

3. Petitioner's Motion to Seek Judgment [Docket No. 27] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2009　　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

(Footnote continued.)

second RRC transfer and after the calculation and payment of his release gratuity, leaving it unclear how it relates to the propriety of those earlier decisions. In any event, this evidence does not impact this Court's conclusion that Morrow lacks a legal right to his requested relief. Thus, both of Morrow's additional motions are denied.